IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Wayne Estep,                     :

      Plaintiff,            :

  v.                              :      Case No. 2:08-cv-0559

Michael J. Astrue,               :      JUDGE FROST
Commissioner of Social Security,        MAGISTRATE JUDGE KEMP
                                 :
      Defendant.

REPORT AND RECOMMENDATION

I.  Introduction

    Plaintiff, Wayne C. Estep, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") which both terminated an earlier award of benefits and denied a subsequent application for disability insurance benefits. His initial application was filed on October 9, 1996, alleging disability beginning February 6, 1996, as a result of depression. His last insured date for disability insurance benefits was September 30, 2007. Because, as more fully set forth below, the Court is recommending that the case be remanded to the Commissioner on essentially procedural grounds, it is important to recited a somewhat detailed history of the administrative proceedings.

    Plaintiff was found to be disabled beginning on February 2, 1996, under Listing 12.04. In April 2002, plaintiff's case was reviewed to determine if he was still disabled. On July 23, 2002, plaintiff was notified that medical improvement had occurred, that he was no longer disabled, and, beginning September 30, 2002, would no longer entitled to disability benefits. After a request for reconsideration was denied, a hearing was held before an Administrative Law Judge on October

20, 2004.  In a decision dated, May 24, 2005, the Administrative Law Judge, following the eight-step sequential evaluation process prescribed in 20 C.F.R. §404.1594(f), which deals with the termination of benefits, determined that plaintiff was no longer disabled.  One of the key determinations to be made under that regulation is whether there is evidence of "medical improvement" in the claimant's condition that is related to his or her ability to work.  See 20 C.F.R. §404.1594(f)(3), (4).

Plaintiff sought review of this decision by the Appeals Council.  In the interim, he filed a new request for disability benefits, but that request was not before the Administrative Law Judge who issued the unfavorable decision dated May 24, 2005.  In his appeal, plaintiff argued that new and material evidence showed that the ALJ's conclusion about medical improvement was erroneous.  See, e.g., Tr. 296-97 (citing new evidence showing that the ALJ's finding that "the claimant's mental status had improved and was no longer an issue with regard to his ability to work" was "not supported by the evidence").  On December 20, 2006 the Appeals Council remanded the case to the ALJ to, among other things, "[g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue ...."  (Tr. 299).  On its own initiative, and completely separate from its order granting the plaintiff's application for remand of the unfavorable decision on the termination of benefits issue, the Appeals Council noted that its "action with respect to the current claim renders the subsequent claim duplicate" and it directed the ALJ to "associate the claim files and issue a new decision on the associated claims."

Following remand by the Appeals Council, a hearing was held before a different Administrative Law Judge on June 20, 2007.  In a decision dated August 30, 2007, the Administrative Law Judge made seven specific findings.  They were (1) that the plaintiff

was insured for disability purposes through September 30, 2007; (2) that he had not worked since October 1, 2002 (the alleged onset date in his new application); (3) that he had one severe impairment, a major depressive disorder; (4) that his impairment was not of Listing severity; (5) that he had the residual functional capacity to do a relatively full range of medium work, with certain mental limitations; (6) that he could perform one of his past jobs; and (7) that he was not under a disability from October 1, 2002 through the date of the decision. No specific findings were made on the issue of medical improvement. That decision became the final decision of the Commissioner when the Appeals Council denied review on April 11, 2008.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on August 11, 2008. Plaintiff filed a statement of errors on September 10, 2008, to which the Commissioner filed a response on November 25, 2008. No reply brief has been filed, and the action is now ripe for decision.

## II. Plaintiff's Statement of Errors

In his statement of errors, plaintiff raises three issues. First, he contends that the Commissioner erred because he did not apply the medical improvement standard when deciding this case. Second, he contends that the Commissioner failed to give controlling weight to the opinions of his treating physicians, Drs. Bonner and Moses. Finally, he asserts that the Commissioner's conclusion that plaintiff is able to engage in substantial gainful employment is not supported by substantial evidence. The Court finds the first of these assignments of error to be dispositive.

## III. Legal Analysis

As noted above, when a claimant is awarded benefits, those benefits may be terminated only if "substantial evidence ...

demonstrates that ... there has been ... medical improvement in the individual's impairment ... [and] the individual is now able to engage in substantial gainful activity...." 42 U.S.C. §423(f). In order to insure that this statutory mandate is carried out correctly, 20 C.F.R. §404.1594(f) prescribes eight "evaluation steps" to be used in a termination of benefits case. The regulation states specifically that the Commissioner "will" follow these steps in order "[t]o assure that disability reviews are carried out in a uniform manner, that decisions of continuing disability can be made in the most expeditious and administratively efficient way, *and that any decision to stop disability benefits are made objectively, neutrally, and are fully documented* ..." Id. (emphasis supplied).

Here, it is undisputed that the decision under review by this Court - the decision of the second Administrative Law Judge dated August 29, 2007 - did not follow this process. Rather, the ALJ followed the five-step evaluation process that is used to evaluate new claims for disability benefits. As can be seen by the Court's summary of the findings which were made, the ALJ did not specifically find that there had been medical improvement in plaintiff's condition or that it related to his ability to do work. The Commissioner argues, however, that any error in that regard was harmless and should be disregarded by the Court because the first administrative decision properly addressed these issues; because the order of the Appeals Council remanding the case did not find any fault with that original decision; and because "the second ALJ was clearly aware that Plaintiff's case was before him, in part, to decide whether he experienced medical improvement." Commissioner's Memorandum, Doc. #12, at 10. These arguments are not persuasive.

First, the Court rejects the notion that the earlier administrative decision has any bearing on this Court's review of

the issue.  That decision was vacated by the Appeals Council and a remand was ordered.  One of the specific purposes of the remand was to allow further consideration of the question of whether, in light of all of the evidence of record, both that which was presented to the first ALJ and that which was presented to the Appeals Council (and deemed by it to be both "new" and "material"), the decision that plaintiff experienced medical improvement was supported by substantial evidence.  Obviously, the first ALJ never decided that question, and the only decision which this Court can and should review is the final decision of the Commissioner, as represented in the second ALJ's opinion.  Simply put, the earlier decision was vacated, a new decision was ordered, and it is that decision which is pertinent to the Court's review.

Second, the failure of the Commissioner to follow an explicit procedural requirement can hardly be excused on the grounds that the ALJ "knew" that the issue to be decided pursuant to that procedural requirement was before him.  Presumably, any ALJ who is faced with a termination of benefits case knows what the issue is (and should also know the correct procedures for evaluating that issue).  The question here is not what the ALJ knew, but what he did or did not do.  He did not follow the eight-step evaluation process prescribed by the controlling regulation, and it is that action (or inaction) the Court must assess.

There is a smattering of case law holding that, in some cases, the failure to follow this procedure can be deemed harmless error.  See, e.g., Lewis v. Barnhart, 201 F.Supp. 2d 918 (N.D. Ind. 2002); see also Corrigan v. Barnhart, 352 F.Supp.2d 32, 43 (D. Mass. 2004)("There is no requirement that a decision strictly announce that it is going to use the medical improvement standard.  Rather, the important question is whether the

evaluation in the decision as a whole reflects consideration of medical improvement and its relation to ability to work, and whether a conclusion drawn from such consideration is supported by substantial evidence"). However, in light of the Court of Appeals' recent statements about the importance of requiring the Commissioner to follow certain types of mandatory procedures, the Court does not find these decisions persuasive.

As the Court of Appeals for the Sixth Circuit has stated, in the context of a different mandatory social security regulation, 20 C.F.R. §404.1527(d),

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. "[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." Mazaleski v. Treusdell, 562 F.2d 701, 719 n. 41; see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs, 102 F.3d 1385, 1390 (5th Cir.1996). To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with §1527(d)(2), would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to "set aside agency action ... found to be ... without observance of procedure required by law." Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001).

Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004).

Wilson recognized that there are some procedural rules which have been adopted purely to facilitate the orderly transaction of business before the agency. These rules can be modified or deviated from in particular cases without

necessarily creating reversible error.  There, the aggrieved party must make a showing of "substantial prejudice."  Id., quoting Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 539 (1970).  However, a rule such as 20 C.F.R. §404.1527(d), dealing with the way in which the opinions of treating medical sources are evaluated, is not a mere rule of convenience, but "an important procedural safeguard" designed to protect claimants seeking disability benefits.  As such, it may not simply be disregarded on grounds that the claimant was unlikely to recover benefits anyway, unless the violation were so *de minimis* that reversal would simply be a useless formality.

Clearly, 20 C.F.R. §404.1594 is not just a rule of convenience or orderly process.  It is derived from an important substantive right, created by statute, which is enjoyed by a claimant receiving disability benefits - the right not to have those benefits terminated unless there is substantial evidence showing that, as a result of relevant medical improvement in the claimant's condition, the claimant is now able to work.  This is clearly the type of "important procedural safeguard" which, under Wilson, cannot lightly be disregarded, and the violation of which will ordinarily lead to a remand.

The Commissioner has not argued here that any of the exceptions identified in Wilson apply.  Clearly, the violation of the rule is not *de minimis*.  Rather, the rule was neither followed, nor even acknowledged, in the decision under review.  Further, it is not clear that a remand would be an act of futility.  The substantive legal standard for denying a new claim for benefits, which is the only standard applied by the Commissioner, is different from the standard to be applied to a termination of benefits case.  In other

words, even a claimant who may be capable of working may continue to receive benefits if there has not been a medical improvement in his or her condition following the prior favorable decision. In short, the plaintiff in this case was entitled to have all of the evidence reviewed in light of the correct legal standard. He did not receive that review. Thus, a remand must be ordered.

## IV. Recommended Disposition

For the foregoing reasons, it is recommended that the plaintiff's statement of errors be sustained and that the case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four, for application of the legal standard and process mandated by 42 U.S.C. §423(f) and 20 C.F.R. §404.1594.

## V. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence
or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the

Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).


/s/ Terence P. Kemp
United States Magistrate Judge